# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| **OUSMANE MAMADOU SY,** | Case No. 4:19 CV 894 |
| Petitioner, | Judge Jeffrey J. Helmick |
| v. | Magistrate Judge James R. Knepp II |
| **IMMIGRATION AND CUSTOMS ENFORCEMENT,** | |
| Respondent. | **REPORT AND RECOMMENDATION** |

## INTRODUCTION

Petitioner Ousmane Mamadou Sy ("Petitioner"), an immigration detainee in federal custody, filed a Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2241 ("Petition") on April 19, 2019. (Doc. 1). Respondent Immigration and Customs Enforcement ("ICE") filed an Answer (Doc. 4), and Petitioner filed a Response (Doc. 6). Subsequently, Petitioner filed a Notice of his release from detention. (Doc. 7). Respondent then filed a Motion to Dismiss (Doc. 8), to which Petitioner file an opposition (Doc. 9), and Respondent filed a Reply (Doc. 10). The district court has jurisdiction over the Petition under § 2241(a). This matter has been referred to the undersigned for a Report and Recommendation pursuant to Local Rule 72.2(b)(2). (Non-document entry dated April 24, 2019). For the reasons discussed below, the undersigned recommends Respondent's Motion to Dismiss (Doc. 8) be granted.

## BACKGROUND

Prior to Initiation of Federal Court Proceedings

Petitioner, a native and citizen of Mauritania, came to the United States as a nonimmigrant visitor in 1999. (Doc. 4-1, at 1) (May 23, 2019 Declaration of Jason Edmister, ICE Detention and

Deportation Officer) (hereinafter "Edmister Decl."); *see also* Doc. 1, at 4. He was placed in removal proceedings in September 2000 after overstaying his visa. (Edmister Decl., at 1); *see also* Doc. 4-1, at 4-5 (Notice to Appear). In May 2005, Petitioner was denied asylum and ordered removed by an immigration judge. (Edmister Decl., at 2); *see also* Doc. 4-1, at 6-7 (Order of Removal); (Declaration of Petitioner Ousmane Mamadou Sy, Doc. 6-2, at 1) (hereinafter "Petitioner Decl."). Petitioner appealed the removal order, but in November 2006 the Board of Immigration Appeals ("BIA") affirmed the immigration judge's decision. (Doc. 4-1, at 80); (Edmister Decl., at 2); (Petitioner Decl., at 1).

Petitioner was placed on an order of supervision in June 2008. (Edmister Decl., at 2); (Petitioner Decl., at 1). He remained under that order of supervision until May 21, 2018, when he was taken into ICE custody pursuant to his removal order. (Edmister Decl., at 2); (Petitioner Decl., at 2). Prior to taking Petitioner into custody, ICE made a travel document request to the Mauritanian embassy, and in early May 2018, a travel document was issued, valid for 120 days. (Edmister Decl., at 2); *see also* Doc. 6-1.[1] In June 2018, Petitioner was scheduled to be removed, but refused to board his flight. (Edmister Decl., at 2); (Petitioner Decl., at 2). ICE subsequently issued a Notice of Failure to Comply Pursuant to 8 C.F.R. § 241.4(g). (Doc. 4-1, at 9). Petitioner was rescheduled for an August 2018 removal flight, but the day prior to his scheduled removal, the BIA granted a stay of removal following Petitioner's motion to reopen his removal case. (Edmister Decl., at 2); *see also* Petitioner Decl., at 3. According to the parties' filings, that stay

---

1. The document itself is dated April 30, 2018 and states it is valid for 120 days from May 1, 2018. *See* Doc. 6-1. Edmister's declaration states that the travel document was issued on May 11, 2018 and valid until August 29, 2018. *See* Doc. 4-1, at 2.

remained in effect at the time of the filing of the Petition (Doc. 1, at 5), and Respondent's Answer (Doc. 4, at 5; Doc. 4-1, at 3).

On August 24, 2018, ICE issued a Decision to Continue Detention stating Petitioner would be detained because ICE was "in possession of a valid travel document . . . and [Petitioner was] currently in a failure to comply status due to [his] refusal to board a prior removal flight." (Doc. 4-1, at 11).

Subsequent to Initiation of Federal Court Proceedings

On April 19, 2019, Petitioner filed the pending Petition pursuant to 28 U.S.C. § 2241. (Doc. 1). In it, he claimed his continued detention was unlawful and he should be released. *Id.* at 6-7. Specifically, he argued he had been detained for longer than six months after a removal order, and there was no significant likelihood his removal would occur in the reasonably foreseeable future. *Id.* at 6 (citing *Zadvydas v. Davis*, 533 U.S. 678, 699-70 (2001)). He sought release and "injunctive relief enjoining Respondent from further unlawful detention of Petitioner." *Id.* at 7.

On May 24, 2019, Respondent filed an Answer, asserting Petitioner's removal was significantly likely in the reasonably foreseeable future and arguing Petitioner had not shown entitlement to release. (Doc. 4). On June 21, 2019, Petitioner filed a Reply. (Doc. 6).

On July 29, 2019, Petitioner filed a notice informing the Court that he was released from ICE detention three days prior. (Doc. 7); *see also* Doc. 9-1, at 1 (release notification). Petitioner was released on an Order of Supervision, which requires, *inter alia*, that he "appear in person . . . upon each and every request of ICE, for identification and for deportation or removal", that he "provide information under oath about [his] nationality, circumstances, habits, associations, and activities and such other information as ICE considers appropriate", and that he first notify ICE of the dates and purpose of any travel outside the state of Ohio for more than 48 hours. (Doc. 9-1, at

3

2). Failure to comply with these conditions, and others, "may result in [Petitioner] being taken into ICE custody and . . . being criminally prosecuted." *Id.* at 4.

Respondent subsequently filed the currently-pending Motion to Dismiss arguing the Petition is moot and this Court lacks subject matter jurisdiction due to Petitioner's release from detention. (Docs. 8, 8-1); *see also* Doc. 8-2 (August 1, 2019 Edmister Declaration stating Petitioner was released on July 26, 2019 and attaching release notice). Petitioner filed an opposition (Doc. 9), and Respondent replied (Docs. 10, 10-1).

### STANDARD OF REVIEW

A motion to dismiss for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1) may take the form of either a facial or a factual attack. *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994). Facial attacks challenge the sufficiency of the pleading itself. *Id.* Factual attacks, on the other hand, challenge the factual existence of subject-matter jurisdiction, regardless of what is or might be alleged in the pleadings. *Id.*

When adjudicating a motion to dismiss based upon a facial attack, the court must accept all material allegations of the complaint as true and must construe the facts in favor of the nonmoving party. *Ritchie*, 15 F.3d at 598 (citing *Scheuer v. Rhodes*, 416 U.S. 232, 235–37 (1974)); *see also Robinson v. Gov't of Malay.*, 269 F.3d 133, 140 (2d Cir. 2001) (holding that all reasonable inferences must be drawn in favor of the plaintiff when evaluating a facial attack on subject-matter jurisdiction).

In contrast, a factual attack contests the validity of the facts alleged as support for subject-matter jurisdiction. *Ritchie*, 15 F.3d at 598. With a factual challenge, no presumption of truthfulness arises for either party, and the court must weigh the evidence to determine its power to hear the case. *Id.* (citing *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir.

4

1990)). In this analysis, the court may consider both the pleadings and evidence not contained in the pleadings. *Makarova v. United States*, 201 F.3d 110 (2d Cir. 2000).

## DISCUSSION

The undersigned notes that the original Petition challenged the length of Petitioner's detention under *Zadvydas v. Davis*, 533 U.S. 678 (2001) and sought release, as well as "preliminary and permanent injunctive relief enjoining Respondent from further unlawful detention of Petitioner." (Doc. 1, at 7). In his Reply, Petitioner again requested release and noted that it was his "understanding that ICE will still have authority to place Petitioner under an Order of Supervision with appropriate terms pursuant to 8 U.S.C. § 1231(a)(3)." (Doc. 6, at 1). Now that Petitioner has obtained the requested release, his arguments in response to Respondent's motion shift to the imposed conditions, contending that if he "fails to comply with these conditions within the time limits that the government has made compulsory, he risks being re-detained immediately for an indefinite period of time." (Doc. 9, at 3). He further argues that ICE has not provided any assurances "that it will not re-detain Petitioner at any time, even if [he] fully complies with their numerous and restrictive conditions" and thus argues this Court should grant injunctive relief. *Id.* at 3-4.

A federal district court may entertain an application for habeas relief only by a person held "in custody under or by color of the authority of the United States," or "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c) (1), (3); *see also Munaf v. Geren*, 553 U.S. 674, 685 (2008). An inmate in federal custody pending removal may challenge the constitutionality of his confinement pursuant to § 2241. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001). The Supreme Court has held indefinite detention of a removable alien is not permissible, as it would threaten the alien's Fifth Amendment's Due Process rights. *Id.* at 699.

5

"[F]or the sake of uniform administration in the federal courts," the Supreme Court recognized that the statutorily-prescribed 90–day period of pre-removal detention may be extended to a six-month period before raising concerns of a constitutional dimension. *See id.* at 701; *see also* 8 U.S.C. § 1231(a)(1)(A).

Preliminarily, the burden of proving a matter has become moot falls upon the party claiming mootness—a burden the Supreme Court has described as "a heavy one." *Los Angeles Cnty. v. Davis*, 440 U.S. 625, 631 (1979) (quoting *United States v. W.T. Grant Co.*, 345 U.S. 629, 633 (1953)). The Supreme Court has explained that for a court to exercise habeas jurisdiction after release, the petitioner must demonstrate he was in custody at the time he filed the petition and his release did not render the petition moot. *Spencer v. Kemna*, 523 U.S. 1, 7 (1998). Because Petitioner was clearly in custody when he filed his Petition, the question is whether this Court is still faced with a case or controversy under Article III, § 2 of the Constitution since his subsequent release from physical confinement. *Id.* A court determines whether an action is moot by "examining whether an actual controversy between the parties exists in light of intervening circumstances." *Fleet Aerospace Corp. v. Holderman*, 848 F.2d 720, 723 (6th Cir. 1988). "Mootness results when events occur during the pendency of a litigation which render the court unable to grant the requested relief." *Carras v. Williams*, 807 F.2d 1286, 1289 (6th Cir. 1986).

To have an existing case or controversy, Petitioner, throughout the litigation, "'must have suffered, or be[en] threatened with, an actual injury traceable to the [Respondent] and likely to be redressed by a favorable judicial decision.'" *Spencer*, 523 U.S. at 7 (quoting *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477 (1990)). A district court generally lacks jurisdiction over a petitioner's habeas claim under 28 U.S.C. § 2241 if the petitioner is not in custody. *See Prieto v. Gluch*, 913 F.2d 1159, 1162 (6th Cir. 1990). Because a petition for a writ of habeas corpus

challenges a government custodian's authority to continue detention, an individual's release after filing generally moots the petition. *Lane v. Williams*, 455 U.S. 624, 632 (1982).

The Sixth Circuit has held that a petition for a writ of habeas corpus challenging the length of detention pending removal is rendered moot by removal. *Enazeh v. Davis*, 107 F. App'x 489, 491 (6th Cir. 2004) ("Enazeh's August 2003 deportation has rendered his first two claims for relief moot. Enazeh sought release from detention pending his removal from the United States and an injunction against execution of the removal order. Because he has already been deported, the court can no longer grant the requested relief.").

And, district courts have held that release on an order of supervision generally moots a petition challenging the length of detention pending removal. *See Willix v. Holder*, 2012 WL 463830, at *1 (W.D. Mich.) ("In his petition . . . [Petitioner] is not challenging the order requiring that he be removed from the United States. Petitioner simply requested that 'ICE release me under an order of supervision' pending his removal from the United States. Because Petitioner has obtained the relief requested in his petition, the undersigned recommends that Willix's petition be dismissed as moot."), *report and recommendation adopted*, 2012 WL 463825; *see also Deme v. Sec'y, Dep't of Homeland Security*, 2019 WL 2484762, at *1 (S.D. Ohio) ("Petitioner does not challenge his removal order in this case. He instead contests his indefinite detention pending removal . . . . In these circumstances, petitioner's . . . release pending removal renders this action moot and deprives the Court of jurisdiction."), *report and recommendation adopted*, 2019 WL 2484761; *Ashqar v. LaRose*, 2019 WL 1793000, at *9-14 (finding § 2241 petition mooted by release on order of supervision and rejecting request for injunctive relief against speculative future detention), *report and recommendation adopted*, 2019 WL 1790453; *Garrido-Maurin v. ICE/DHS*, 2018 WL 3853706, at *3 (N.D. Ohio) (finding § 2241 petition mooted by release on

order of supervision), *report and recommendation adopted*, 2018 WL 3842780; *Kahn v. Attorney General*, 2016 WL 4004616, at *2 (N.D. Ohio) ("As Petitioner has received his requested relief by being released from custody on an order of supervision, there is no longer an active case or controversy."), *report and recommendation adopted*, 2016 WL 4009885.

The underlying order of removal is not itself reviewable in this Court, nor does Petitioner so argue. *See* 8 U.S.C. § 1252(a)(2)(A)(i) ("[N]o court shall have jurisdiction to review . . . any individual determination or to entertain any other cause or claim arising from or relating to the implementation or operation of an order of removal[.]"). And as *Zadvydas* explained, and Petitioner expressly acknowledged, release pending removal is to be accompanied by certain conditions. *See* 533 U.S. at 700 ("[O]f course, the alien's release may and should be conditioned on any of the various forms of supervised release that are appropriate in the circumstances, and the alien may no doubt be returned to custody upon a violation of those conditions.") (citing 8 U.S.C. § 1231(a)(3)); (Doc. 6, at 1) (Petitioner noting his "understanding that ICE will still have authority to place [him] under an Order of Supervision with appropriate terms pursuant to 8 U.S.C. § 1231(a)(3)"); *see also* 8 U.S.C. § 1231(a)(3) (listing conditions of supervision such as appearance before an immigration officer for identification, submission to a medical or psychiatric examination, providing information, and "to obey reasonable written restrictions on the alien's conduct or activity"); 8 C.F.R. § 241.5(a) (listing conditions of supervision).

Petitioner was released from ICE custody on July 26, 2019. *See* Docs. 7, 8-2. Once Petitioner was released, this Court could no longer grant his request for habeas relief in the form of release from his continued detention based on an alleged violation of the due process principles announced in *Zadvydas*. *See Carras*, 807 F.2d at 1288 ("Mootness results when events occur during the pendency of a litigation which render the court unable to grant the requested relief.");

8

*see also Powell v. McCormack*, 395 U.S. 486, 496 (1969) ("[A] case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome.").

In response to ICE's mootness argument, Petitioner first argues that the conditions of release significantly confine and restrain his freedom, thereby rendering him "in custody" for purposes of the habeas corpus statutes. (Doc. 9, at 2-3). This is true. *See, e.g.*, *Jones v. Cunningham*, 371 U.S. 236, 243 (1963) (holding that a paroled petitioner was subject to "conditions which significantly confine[d] and restrain[ed] his freedom," such that he was "in the 'custody' of the [State] Parole Board within the meaning of the habeas corpus statute" and was thus entitled to invoke federal habeas jurisdiction); *Rosales–Garcia v. Holland*, 322 F.3d 386, 395 (6th Cir. 2003) (likening a petitioner's release from INS detention to the *Jones* petitioner's release on parole, and finding that an immigration parole "impose[d] similarly restrictive conditions"); *Berry v. Adducci*, 2010 WL 2105130, at *3 (E.D. Mich.) ("[T]he Court finds that Petitioner, who is subject to both a final Order of Removal and an interim Order of Supervision, is 'in custody' for purposes of invoking federal habeas jurisdiction.").

However, to obtain habeas relief, Petitioner must not merely show that he is "in custody", but rather that he is "in custody in violation of the Constitution or laws or treaties of the United States". *See* 28 U.S.C. § 2241(c)(3). The constitutional violation identified in the Petition identified was that described by *Zadvydas* – detention for longer than permitted by the Due Process Clause. Because Petitioner has been released, this Court can no longer grant relief from that alleged harm.

Petitioner contends, however, that this case falls within two exceptions to the mootness doctrine – voluntary cessation, and capable of repetition, yet evading review, citing *Rosales-Garcia v. Holland*, 322 F.3d 386 (6th Cir. 2003). Therefore, he contends, the Court "should grant

9

the relief Petitioner sought with his habeas petition: an order enjoining Respondent from further unlawful detention of Petitioner." (Doc. 9, at 4).

The undersigned finds this case distinguishable from *Rosales-Garcia* and injunctive relief not appropriate. The Petitioner in *Rosales* arrived in the United States as part of the Mariel boatlift in 1980. 322 F.3d at 390. He was permitted entry into the United States "pursuant to the Attorney General's authority under 8 U.S.C. § 1182(d)(5)(A) (1982) to grant immigration parole", which is "governed by regulations specifically promulgated by the INS for Mariel Cubans." *Id.* at 391. Following a criminal conviction, Rosales's parole was revoked and exclusion proceedings initiated. *Id.*

> [Rosales was ordered] excluded and, pursuant to the immigration law in effect at the time, [he] should have been immediately deported. Cuba, however, has refused to repatriate most of the Mariel Cubans whom the United States has excluded, and the U.S. government does not contend in this appeal that a repatriation by Cuba of . . . Rosales . . . is reasonably foreseeable. Because Cuba refused to accept the deportation of . . . Rosales . . . the INS has detained [him] in prison[] in the United States.

*Id.* at 391-92. At the point at which Rosales's case reached the Sixth Circuit, his immigration parole had been revoked twice, and he had been detained from July 1986 to May 1988 and from May 1997 to April 2001. *Id.* at 392. Petitioner argued that his indefinite detention violated constitutional due process, based on the principles articulated in *Zadvydas*. *Id.* at 401. In rejecting the government's argument that Rosales's petition was moot based on his release from custody, the Sixth Circuit explained:

> Although Rosales is not currently being detained, his immigration parole can be revoked by the INS at any time for almost any reason. Unlike parole granted following incarceration for a criminal conviction, Rosales need not do anything for the INS to revoke his parole; for instance, the INS can revoke Rosales's parole if it deems such revocation to be "in the public interest." *See* 8 C.F.R. § 212.12(h) (2002). Thus, Rosales's "release" into the United States does not constitute a termination of detention; it simply constitutes a reprieve from detention. Under these circumstances, we believe that Rosales is threatened with an actual injury

10

traceable to the defendant and likely to be redressed by a favorable judicial decision. We therefore conclude that Rosales's appeal is not moot.

*Id.* at 395–96 (footnotes omitted).

The factual circumstances here are distinguishable. In *Rosales-Garcia*, the underlying legal question was whether the interpretation of the due process clause articulated by *Zadvydas* – interpreting 8 U.S.C. § 1231(a)(6) to include an implicit reasonable (six month) time limitation to avoid due process concerns – applied not only to aliens removable on grounds of deportability, but also to aliens (like Rosales) who were removable on grounds of inadmissibility. 322 F.3d at 408-15. Because, the Sixth Circuit explained, Petitioner's parole had been revoked twice and his parole could be revoked by the INS "at any time for almost any reason", it "believe[d] that Rosales [was] threatened with an actual injury traceable to the defendant and likely to be redressed by a favorable judicial decision." *Id.* at 396. That injury was potentially indefinite detention. *See id.* at 397 ("Because the INS can revoke Rosales's parole at any time and has in fact revoked Rosales's parole twice in the past fifteen years, there is a reasonable expectation that Rosales will again be subject to indefinite INS detention."). The Sixth Circuit explained that the voluntary cessation and capable of repetition, yet evading review exceptions to mootness supported this conclusion. *Id.* at 396-97.

By contrast here, the undersigned finds Petitioner no longer "ha[s] a personal stake in the outcome of the lawsuit", such that he suffers "an actual injury traceable to the [Respondent] and likely to be redressed by a favorable judicial decision." *Spencer*, 523 U.S. at 7 (quoting *Lewis*, 494 U.S. at 477); *see also Mbaye v. Price*, 2012 WL 4364256, at *1 (S.D. Ohio) (rejecting Report and Recommendation which recommended motion to dismiss on mootness grounds be denied, and granting motion to dismiss because "Respondent correctly notes, Petitioner has already obtained the relief he seeks. The record now reflects Petitioner likewise has obtained the relief authorized under *Zadvydas*[.]"). As discussed above, the conditions of release imposed in Petitioner's Order

11

of Supervision are expressly contemplated by the statute and regulations. And a ruling on the constitutionality of Petitioner's prior detention would not redress any injury. Further, for the reasons discussed in greater detail below, Petitioner's request for injunctive relief is premature.

In *Rosales-Garcia*, it was clear Rosales could not be removed and his parole had been revoked twice in fifteen years despite that fact. By contrast here, Petitioner remained under an order of supervision for almost ten years and it was only revoked after ICE obtained a travel document for his removal. *See* Edmister Decl., at 2; Doc. 6-1.[2] Moreover, ICE attempted to effectuate that travel document one month later on June 22, 2018, but Petitioner refused to board the plane. (Edmister Decl., at 2); (Petitioner Decl., at 2). ICE subsequently issued a Notice of Failure to Comply Pursuant to 8 C.F.R. § 241.4(g). (Doc. 4-1, at 9) ("As you are still within the removal period, you are to remain in ICE custody until you demonstrate that you are making reasonable efforts to comply with the order of removal, and that you are cooperating with ICE's efforts to remove you."). Petitioner was scheduled again for a removal flight in August, but obtained a stay of removal the day prior. (Edmister Decl., at 2); *see also* Doc. 1, at 5. On August

---

2. ICE asserts that Petitioner's order of supervision was revoked because he failed to request/make an application for a travel document as instructed. (Edmister Decl., at 2). In his Reply, Petitioner "disputes ICE Officer Edmister's statement that Sy did not apply for a travel document from the Mauritanian government" (Doc. 6, at 3), citing his Declaration, which states:

> Contrary to ICE Agent Edmister's Declaration, Doc. 4-1, I did go to the Mauritanian Embassy in Washington D.C. in, I think, 2015 to obtain a passport. The Mauritanian Embassy told me that I could not get a passport issued by the Embassy but would have to apply in Mauritania in court to get a judge to say I was a citizen of Mauritania. ICE knows that the Mauritanian Embassy has said that same thing to many Mauritanians under ICE Orders of Supervision—that we have to go to court in Mauritania to get a judge to determine if we are Mauritanians. But returning to Mauritania would be extremely dangerous.

(Petitioner Decl., at 2).

24, 2018, ICE issued a Decision to Continue Detention stating Petitioner would be detained because ICE was "in possession of a valid travel document . . . and [Petitioner was] currently in a failure to comply status due to [his] refusal to board a prior removal flight." (Doc. 4-1, at 11).

ICE here only detained Petitioner pursuant to his removal order when removal appeared likely. Petitioner has not shown reason to believe that the factual circumstances here – detention after a travel document was obtained (and lengthened due, in part, to his own refusal to board a removal flight and obtaining a stay from the BIA) – are likely to recur. Should Petitioner be re-detained, it will be under different factual circumstances.

Although Petitioner is correct that his release notification does not cite a specific regulation under which he was released, the undersigned notes that his Order of Supervision states: "Because ICE has not effectuated your deportation or removal during the period prescribed by law, it is ordered that you be placed under supervision and permitted to be at large under the following conditions". (Doc. 9-1). Moreover, the conditions to which Petitioner points are within what is contemplated by the statute and the regulations. *See* 8 U.S.C. § 1231(a)(3); 8 C.F.R. § 241.5(a); *see also Zadvydas*, 533 U.S. at 696 ("The choice, however, is not between imprisonment and the alien 'living at large. . . . It is between imprisonment and supervision under release conditions that may not be violated." (citing 8 U.S.C. § 1231(a)(3); 8 C.F.R. § 241.5)). To the extent that Petitioner contends that the conditions imposed are onerous and he may be detained if he violates them, " a § 2241 habeas petition is not the appropriate vehicle for challenging the conditions of his confinement." *Velasco v. Lamanna*, 16 F. App'x 311, 314 (6th Cir. 2001); *see also Prieser v. Rodriguez*, 411 U.S. 475, 484 (1973) ("[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody.").

Request for Injunctive Relief

The second remedy Petitioner seeks, both in his Petition, and in his opposition to Respondent's motion, is an injunction preventing Respondent from re-detaining him. *See* Doc. 1, at 7 ("Enter preliminary and permanent injunctive relief enjoining Respondent from further unlawful detention of Petitioner); Doc. 9, at 4 ("This Court should grant the relief Petitioner sought with his habeas petition: an order enjoining Respondent from further unlawful detention of Petitioner."). Respondent contends that Petitioner's "claims that he could be taken into DHS custody at any time are speculative and he provides no reason to believe that he will violate his conditions set forth in the Order of Supervision" and that he "has not given this Court any reason to believe that he will violate his order of supervision thereby placing himself at risk of renewed detention, and, likewise, no reason to believe that a reasonable expectation exists that this same case or controversy with reoccur." (Doc. 10-1, at 7).

As set forth above, federal courts are limited by Article III, Section 2 of the Constitution to considering cases or controversies. "One element of the case-or-controversy requirement" is that Petitioner "must establish that [he has] standing to sue." *Raines v. Byrd*, 521 U.S. 811, 818 (1997). To support Article III standing, Petitioner must show an "injury in fact", that is, "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (internal quotations and citations omitted). Petitioner must show—among other things— that it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Id.* at 561 (internal quotations and citations omitted). Moreover, Petitioner "must demonstrate separate standing to seek declaratory or injunctive relief focused on prospective harm." *Barber v. Miller*, 809 F.3d 840, 849 (6th Cir. 2015) (citing *O'Shea v. Littleson*, 414 U.S.

14

488, 495-96 (1974)). In so doing, Petitioner must show that "the threatened injury is 'certainly impending' or that there is a 'substantial risk' that the harm will occur." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014) (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013)).

Despite Petitioner's argument, for many of the same reasons stated above, the undersigned finds any future detention is, at this stage, purely "conjectural or hypothetical" *Lujan*, 504 U.S. at 560, and not "certainly impending", *Clapper*, 568 U.S. at 409. As such, Petitioner lacks standing to seek the requested relief.

Furthermore, Petitioner's claim is not yet ripe. "The ripeness doctrine serves to avoid premature adjudication of legal questions and to prevent courts from entangling themselves in abstract debates that may turn out differently in different settings." *Warshak v. United States*, 532 F.3d 521, 525 (6th Cir. 2008) (en banc) (quoting *Nat'l Park Hospitality Ass'n v. Dept. of Interior*, 538 U.S. 803, 807 (2003) (internal brackets and ellipsis omitted)). Ripeness is essentially "a question of timing" and advises "against resolving a case that is anchored in future events that may not occur as anticipated, or at all." *Nat'l Rifle Ass'n of Am. v. Magaw*, 132 F.3d 272, 284 (6th Cir. 1997). The ripeness doctrine "is drawn both from Article III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction." *Warshak*, 532 F.3d at 525 (quoting *Nat'l Park Hospitality Ass'n*, 538 U.S. at 808). A claim is not "fit" for judicial review when there is no certainty whether the challenged conduct will occur in the future. *Id.* at 526 (citing *Texas v. United States*, 523 U.S. 296, 300 (1998) (holding that a claim is not ripe where it depends on "contingent future events that may not occur as anticipated, or indeed may not occur at all")). "Answering difficult legal question before the arise and before the courts know how they will arise is not the way we typically handle constitutional litigation." *Id.* (citing *Lujan*, 497 U.S. at 894).

The Court cannot predict the circumstances of any future, hypothetical, detention, and thus it would be improper to make a ruling regarding any such detention. *See, e.g.*, *Hechavarria v. Salinas*, 2018 WL 1938040, at *3 (S.D. Tex.) ("The Court cannot predict at this juncture whether any future detention of Hechavarria would, in fact, violate the Supreme Court's holding in *Zadvydas v. Davis* and entitle him to relief."), *report and recommendation adopted*, 2018 WL 2013081; *Lin v. Lynch*, 2016 WL 1253265, at *2 (C.D. Cal.) ("[A]lthough Petitioner seeks an injunction preventing Respondents from again detaining him, a challenge to any future detention is not yet prudentially ripe. . . Indeed, the Court cannot now determine whether any future detention of Petitioner will violate the holding in *Zadvydas*. . . ."); *Woodley v. Holder*, 2010 WL 5553987, at *1 n.1 (M.D. Ga.) ("The Court cannot rule on issues that are not currently ripe, such as a potential future violation of Petitioner's rights."), *report and recommendation adopted*, 2011 WL 53176.

Any future detention is at this point entirely hypothetical. Should Petitioner be re-detained in a manner he believes violates the Constitution, he may raise the issue in a habeas corpus petition at that time. Because Petitioner is no longer being detained by Respondent, Petitioner's request for relief under *Zadvydas* has been rendered moot. Because this Court is no longer faced with an active case or controversy, the Court lacks jurisdiction over his habeas Petition. For these reasons, the undersigned recommends the Court grant Respondent's Motion to Dismiss (Doc. 8). [3]

---

3. In the alternative, even if this Court were to find the Petition not moot, the undersigned would recommend the Petition – which is fully briefed – be denied on its merits. This is so because even assuming *arguendo* that *Zadvydas*'s six-month presumptively-reasonable removal period has expired (which Respondent disputes), Petitioner has not satisfied his initial burden under *Zadvydas* to "provide[] good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future". 533 U.S. at 701. "[A]n alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.* Rather, the evidence indicates that Petitioner remained detained due, in large part, to his own actions to prevent his removal by refusing to board a removal flight, and obtaining a stay of removal from the BIA. *See, e.g., Zheng v. Decker*, 618 F. App'x 26, 28 (2d Cir. 2015) (summary order) (affirming denial of petition where the government was "prevented from removing Zheng"

16

## CONCLUSION AND RECOMMENDATION

Following review, and for the reasons stated above, the Court recommends Respondent's Motion to Dismiss (Doc. 8) be granted without prejudice to Petitioner's right to file a new § 2241 petition in the future if a change in his circumstances occurs.

s/ James R. Knepp II
United States Magistrate Judge

*ANY OBJECTIONS* to this Report and Recommendation must be filed with the Clerk of Court within fourteen days of service of this notice. Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).

---

because of his various motions to stay his removal, some of which remained pending); *Mohamed v. Adducci*, 2016 WL 770624, at *3 (W.D. Mich.) ("Because Petitioner 'hindered his own removal,' his continued detention is not unconstitutional.") (internal quotation omitted). And Petitioner has presented no evidence that there is any impediment to his removal should the stay of removal be lifted.